UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MOUNT VERNON FIRE INSURANCE COMPANY,

                Plaintiff,

-against-

MUNOZ TRUCKING CORP., MENDEZ TRUCKING INC., REBCO CONTRACTING CORP., DIEGO A. ULLOA-TAPIA, S3 TUNNEL CONSTRUCTORS, SKANSKA USA, INC., SCHIAVONE CONSTRUCITON CO. LLC, J.F. SHEA CONTRUCTION INC., and BRICE MASTROLUCA, individually and as Administrator of the Estate of LAURENCE RENARD, deceased,

                Defendants.

**OPINION AND ORDER**

13 Civ. 6268 (ER)

---

Ramos, D.J.:

      Mount Vernon Fire Insurance Company ("Mount Vernon") brings this action against Munoz Trucking Corp. ("Munoz"), Mendez Trucking Inc. ("Mendez"), Rebco Contracting Corp. ("Rebco"), Diego A. Ulloa-Tapia ("Ulloa-Tapia"), S3 Tunnel Constructors ("S3"), Skanska USA, Inc. ("Skanska"), Schiavone Construction Co. LLC ("Schiavone"), J.F. Shea Construction Inc. ("J.F. Shea"), and Brice Mastroluca ("Mastroluca") (collectively, "Defendants"), seeking a declaratory judgment that Mount Vernon is not obligated to indemnify or provide a defense to the defendants in the lawsuit *Brice Mastroluca, individually and as Administrator of the Estate of Laurence Renard, deceased, and on behalf of all heirs and next-of-kin of Laurence Renard, deceased v. Diego A. Tapia-Ulloa, S3 Tunnel Constructors, Skanska USA Inc., Schiavone Construction Co. LLC, J.F. Shea Construction, Inc., Mendez Trucking, Inc., Munoz Trucking Corp., and Rebco Contracting Corp.*, Index No. 100585/2012 (the "Underlying Action"), pursuant to a policy of insurance. Before the Court is Mount Vernon's motion for summary

judgment, Doc. 89.  For the reasons stated herein, Mount Vernon's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. The Underlying Action[1]

On January 18, 2012, Mastroluca commenced the Underlying Action by filing a complaint (the "Underlying Complaint") against Munoz, Mendez, Rebco, Ulloa-Tapia, S3, Skanska, Schiavone, and Shea (collectively, the "Underlying Defendants") in the Supreme Court of New York, New York County.  Pl. 56.1 ¶ 1; *see* Declaration of Steven Verveniotis, filed in support of Plaintiff's Motion for Summary Judgment ("Verveniotis Decl."), Doc. 92, Ex. A ("Underlying Compl.").[2]  Mastroluca alleges that the Underlying Defendants are collectively liable for an accident, in which his wife Laurence Renard ("Renard") was hit by a dump truck driven by Ulloa-Tapia and killed.  Pl. 56.1 ¶ 2; Underlying Compl. ¶ 67.

According to Mastroluca, the Underlying Defendants were agents to each other and acting in concert at the time of the accident.  Underlying Compl. ¶ 18.  Mastroluca alleges that Defendant S3 was a joint venture comprised of defendants Skanska, Schiavone, and J.F. Shea.  *Id.* ¶ 19.  On January 24, 2011, S3 and non-party Metropolitan Transportation Authority ("MTA") agreed to a contract regarding the construction of a portion of the Second Avenue subway tunnels extending from 92nd to 63rd Street (the "Second Avenue Subway Project").  Pl. 56.1 ¶ 3; Underlying Compl. ¶ 25.  S3 then contracted with Defendant Rebco to perform debris removal from the Second Avenue Subway Project, and Rebco contracted with Munoz and

---

[1] The Court makes no findings regarding the truth of the allegations in the Underlying Action.

[2] The notation "Pl. 56.1" refers to Mount Vernon's statement of undisputed material facts pursuant to Local Rule 56.1, Doc. 94.  All facts are undisputed unless otherwise noted.

Mendez to provide trucks and personnel for the debris removal.  Pl. 56.1 ¶ 4; Underlying Compl. ¶¶ 29-30.

Munoz is described in the Underlying Complaint as the "parent, principal and/or alter ego" of Mendez, and is alleged to have "ordered, directed, contracted or otherwise arranged for" Mendez to provide personnel and equipment for Munoz's use in performing the debris removal. Underlying Compl. ¶¶ 34, 43.  According to the Underlying Complaint, Mendez was the registered owner of the truck involved in the underlying accident, and Ulloa-Tapia, the driver of the truck, was an employee of both Munoz and Mendez.  *Id.* ¶¶ 37-44.

Mastroluca claims that Munoz, as well as the other Underlying Defendants, were negligent and reckless in "the ownership, oversight, supervision, selection, maintenance, operation, control and/or direction of" the dump truck driven by Ulloa-Tapia.  *Id.* ¶ 75.  The Underlying Complaint further alleges that "dump trucks traveling to and from the [Second Avenue Subway] work zone were required to adhere to designated truck routes," that those trucks were "required to use E. 86th Street when traveling West or East between Second and First Avenues," and that the trucks were expressly "prohibited from using the one-way numbered cross-streets, including 90th Street between Second and First Avenues," where the accident occurred.  *Id.* ¶¶ 56-58.  It asserts that Munoz was on actual notice that the hauling of construction debris was taking place on prohibited one-way, numbered streets, including E. 90th Street, *id.* ¶ 60, and that Munoz was negligent by, *inter alia*, failing "to ensure that dump trucks traveling to and from the work zone followed the designated haul routes"; failing "to ensure that the subject truck . . . did not travel on 90th Street between Second and First Avenues"; and failing "to administer the work zone in a reasonably safe and careful manner."  *Id.* ¶ 75.  The

Underlying Complaint asserts that these actions and omissions were proximate causes of Renard's death. *Id.* ¶ 78.

### B. The Insurance Policy

Mount Vernon issued a commercial general liability ("CGL") insurance policy to Munoz bearing the policy number CL 2359277B, which covered the period from November 11, 2010 to November 11, 2011 (the "Policy"). See Affidavit of Iqbal Lall, filed in support of Plaintiff's Motion for Summary Judgment ("Lall Aff."), Doc. 93, Ex. A, Policy Declaration at 1, Pl. 56.1 ¶ 38.

The Policy provides in Section I(1)(a) that Mount Vernon will "pay those sums that [Munoz] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the Policy] applies"; however, Mount Vernon "will have no duty to defend [Munoz] against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which [the Policy] does not apply." Lall Aff., Ex. A, Commercial General Liability Coverage Form ("CGL Form") at 1. As set forth in Section I(2)(g), the Policy's coverage does not apply to: "Bodily Injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured. . . ." (the "Auto Exclusion"). CGL Form at 4; Pl. 56.1 ¶ 39. The Auto Exclusion applies:

> even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any ... 'auto' . . . that is owned or operated by or rented or loaned to any insured.[3]

*Id.*

---

[3] The auto exclusion also contains a number of exceptions, not listed here, which are not pertinent to the instant motion.

4

The Policy also includes an endorsement for additional insured coverage, which provides:

> Section II – Who Is An Insured is amended to include as an additional insured any person(s) or organization(s) for whom you [Munoz] are performing "your work" under a written contract or agreement, that requires such person(s) or organization(s) to be added as an additional insured on your policy.  Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" occurring after the effective date of such contract or agreement that is caused, in or whole or in party by:
>
>   1. Your acts or omissions; or
>   2. The Acts or omissions of those acting on your behalf;
>
> in the performance of 'your work' for the additional insured.
>
> Coverage for an additional insured under this endorsement ends when "your work" for that additional insured ends or is put to its intended use by any person or organization.

Lall Aff., Ex. A, Blanket Additional Insured Endorsement ("Add'l Ins. Endorsement").

### C. Disclaimer of Coverage

The parties dispute when Mount Vernon first received notice of the accident between Ulloa-Tapia and Renard.  Defendants provide evidence that Munoz's insurance broker completed a notice of claim on February 4, 2011, and assert that the notice of claim was sent to Mount Vernon's insurance broker, before being forwarded to Mount Vernon that same day.  Munoz 56.1 Opp. ¶ 73; Declaration of Mark S. Winter, filed in support of Defendant Munoz's Opposition to Plaintiff's Motion for Summary Judgment ("Winter Decl."), Doc. 101-3, Ex. 11.[4]  Mount Vernon claims that it was not until Munoz's insurance broker sent a "Claim Set Up Sheet" on February 9, 2011 that it became aware of the claim.  Pl. 56.1 ¶ 73.

The parties do not dispute that at some point subsequent to February 9, 2011, Mount Vernon commenced an investigation into the claim.  Pl. 56.1 ¶¶ 73-74; Munoz 56.1 Opp. ¶ 74.

---

[4] The notation "Munoz 56.1 Opp." refers to Munoz's opposition to Plaintiff's 56.1 statement of undisputed material facts, Doc. 101-16.

On February 15, 2011, Mount Vernon's representative, Rick Lall, emailed counsel for Munoz, Mark Winter, seeking permission for Mount Vernon's investigator to discuss the claim with Munoz's representatives.  Lall Aff., Ex. C.  Mr. Winter informed Mr. Lall that he would be unavailable until the end of the month.  Lall Aff., Ex. F.  The interview ultimately took place on March 3, 2011.  *See* Lall Aff., Ex. G.  Twelve days later, on March 15, 2011, Mount Vernon issued a disclaimer letter to Munoz, as well as Mastroluca, Rebco, Mendez, and Ulloa-Tapia, disclaiming coverage based on the fact that the accident arose from the operation of an auto by an insured, and was thus subject to the Auto Exclusion.  Pl. 56.1 ¶ 78; Lall Aff., Ex. H.

On May 11, 2011, Mount Vernon received a tender for insurance coverage from the New York City Transit Authority, MTA, Skanska, Schiavone, J.F. Shea, and S3.  Pl. 56.1 ¶ 80; Lall Aff., Ex. I.  On June 15, 2011, Mount Vernon responded to the tender letter, and restated its position that the Policy did not offer coverage for the claims presented in the Underlying Action.  Pl. 56.1 ¶ 81; Lall Aff., Ex. J.

On February 3, 2012, Munoz's broker faxed a copy of the complaint in the Underlying Action to Mount Vernon.  Pl. 56.1 ¶ 82; Lall Aff., Ex. K.  On February 15, 2012, Mount Vernon issued a third disclaimer to all the parties named in the Underlying Complaint, restating its position that the Policy did not provide coverage.  Pl. 56.1 ¶ 83; Lall Aff., Ex. L.

    **D. Procedural Background**

Mount Vernon commenced this declaratory judgment action on September 6, 2013, and moved for summary judgment on September 30, 2015.  Docs. 1, 89.  On November 17, 2015, Munoz filed an opposition.  *See* Doc. 101.  On November 18, 2015, Mendez and Mastroluca joined in the arguments made by Munoz, and filed additional briefing.  Docs. 103, 104.  Also on November 18, 2015, S3, Schiavone, J.F. Shea, and Skanska filed a declaration joining in the

arguments of the each of the other Defendants.  Doc. 102.

## II. LEGAL STANDARD

Summary judgment may be granted when it is shown that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (same).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).

Where the sole question presented on a motion for summary judgment is the interpretation of a clear and unambiguous contract, the issue is one of law that may be decided by the Court upon a motion for summary judgment.  *See Fed. Ins. Co. v. Zurich Am. Ins. Co.*, 445 F. App'x 405, 408 (2d Cir. 2011); *see also Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.*, 775 F. Supp. 606, 609 (S.D.N.Y. 1991) (same).  The Court must, therefore, determine whether the Auto Exclusion in the policy bars coverage for the underlying accident, and, if it does, whether Mount Vernon properly disclaimed coverage to the Underlying Defendants.

## III. DISCUSSION

### A. Choice of Law

"Federal courts sitting in diversity look to the choice-of-law rules of the forum state."

*Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).[5]  Pursuant to New York's choice-of-law rules, an agreement between the parties to apply New York law, even if implicit, is sufficient to establish the appropriate choice of law.  *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000); *see also Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).  Because the parties' briefing assumes New York law applies, the Court shall apply New York law.  *See Atlantic Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 252 (S.D.N.Y. 2013).

### B. Duty to Defend

Mount Vernon seeks a declaration with respect to two separate duties:  its duty to defend the Underlying Defendants and its duty to indemnify them.  In New York, "an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify."  *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)).  "The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person."  *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985).

To determine if a defense obligation exists, the Court must determine whether the allegations, "liberally construed," are "within the embrace of the policy."  *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006) (citing *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 8-9 (1985)).  The insured party bears the burden of establishing that the claimed loss falls within the scope of the policy.  *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (2002).  "If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend."

---

[5] Mount Vernon alleges subject matter jurisdiction based on diversity.  According to the Complaint, Mount Vernon is a Pennsylvania corporation with its principal place of business in Pennsylvania.  None of the Defendants' principal place of business is Pennsylvania, nor were any incorporated there.  Complaint, Doc. 1, ¶¶ 1-2.

*Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989) (internal citation omitted). Furthermore, if any allegations "fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be," an insurer must defend. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 306 (1984). Thus, the "insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy." *Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*, 95 Civ. 4845 (RPP), 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996) (citing *Seaboard*, 64 N.Y.2d at 310-11). And the "duty [to defend] remains 'even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered.'" *Auto. Ins. Co. of Hartford,* 7 N.Y.3d at 137 (quoting *Fitzpatrick v. Am. Honda Motor Co.,* 78 N.Y.2d 61, 63 (1991)).

Conversely, "a defense obligation may be avoided only where there is 'no possible factual or legal basis' on which an insurer's duty to indemnify under any provision of the policy could be held to attach." *Century 21*, 442 F.3d at 82-83 (quoting *Servidone*, 64 N.Y.2d at 424). When an exclusion clause is relied upon to deny coverage, "the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (2002). The insurer must "demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions." *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137 (citing *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 159 (1992)).

## C. Coverage Under the Policy

### 1. Additional Insured Coverage

As a preliminary matter, the Court must first determine which parties are covered by the Mount Vernon Policy besides the named insured, Munoz. Mendez, Rebco, Ulloa-Tapia, S3,

Skanska, Schiavone, and J.F. Shea contend that they are each additional insureds under the Policy.

The Policy provides that an additional insured is any person or organization for whom Munoz performs work "under a written contract or agreement," which requires such person or organization to be added as an additional insured on the Policy. Add'l Ins. Endorsement at 1.[6] On March 11, 2015, Magistrate Judge Maas issued an order that "[a]ny party claiming additional insured coverage under the [Policy] that is the subject of this action must do so, in writing, and provide supporting documentation to Plaintiff's counsel by March 25, 2015." See Verveniotis Decl., Ex. V. None of the Underlying Defendants submitted any documentation by that deadline, and Mount Vernon indicates that, to this date, there is no evidence in the record of any written contract or agreement between any of the Underlying Defendants and Munoz requiring that they be considered an additional insured.[7]

Mendez, the only defendant to address the issue in opposition, points to a truck lease agreement between Munoz and Mendez with an effective date of January 3, 2011, which states: "Lessee shall maintain all necessary insurance and protect the Lessor from any and all actions related to the operation of leased item." Declaration of Stephen L. O'Brien, filed in opposition to Plaintiff's Motion for Summary Judgment, Doc. 103, Ex. C ¶ 6. Mendez argues that this paragraph in the lease agreement creates a question of fact as to whether Munoz indeed provided insurance for Mendez, as required under the lease agreement, and thus whether Mendez is an additional insured under the Policy. The flaw in this argument, however, is that the lease agreement defines *Mendez* as the Lessee, not Munoz. Thus, the lease agreement does not in fact

---

[6] Defendants do not dispute that in order to be considered an additional insured under the Policy, any contract or agreement to perform work for the insured must be written.

[7] Munoz actually concedes that its agreement with Rebco to conduct debris removal for the Second Avenue Subway Project was verbal. Verveniotis Decl., Ex. U at 90.

indicate that Munoz was required to provide insurance for Mendez, let alone that it ultimately did so.

In order to trigger additional insured coverage, the one claiming such coverage bears the burden of proving it.  *See Nat'l Abatement Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 33 A.D.3d 570, 570-71 (1st Dep't 2006) ("The party claiming insurance coverage bears the burden of proving entitlement . . . and is not entitled to coverage if not named as . . . an additional insured on the face of the policy.") (citations omitted).  Because the Underlying Defendants have not provided any evidence of a written contract or agreement with Munoz providing for additional insured coverage, none of the Underlying Defendants have satisfied their burden of demonstrating that they are additional insureds.  *See id.* (holding that additional insured coverage does not exist under liability policy when policy provided such coverage only if required by written contract, and no such contract existed at time of accident giving rise to action against claimants).

### 2. Mount Vernon's Duty to Defend Munoz

With regard to Munoz, the named insured, the Court finds that the Policy does not provide for its defense in the Underlying Action.  The Policy expressly excludes from coverage "'Bodily Injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured. . . ."  CGL Form at 4.  The Underlying Complaint clearly alleges that Renard's death arose out of the use of an auto owned and/or operated by Munoz.  According to the Underlying Complaint, Munoz was negligent in "the *ownership*, oversight, supervision, selection, maintenance, *operation*, control and/or direction of" the dump truck driven by Ulloa-Tapia, which resulted in Renard's death.  Underlying Compl. ¶ 75.

The brunt of Defendants' argument is that the truck was in fact owned and operated by Mendez, and that Ulloa-Tapia was solely an employee of Mendez. Defendants assert that, at best, there are too many questions of material fact regarding Munoz's ownership/operation of the truck and regarding Ulloa-Tapia's employment for summary judgment to be appropriate. But in considering whether an insurer has a duty to defend, the Court's review is limited to the allegations in the Underlying Complaint. Here, the Complaint does include allegations that Mendez owned the subject vehicle and that Ulloa-Tapia was an employee of Mendez. However, the Complaint also alleges that Munoz is the "parent, principal and/or alter ego of Mendez," and that Ulloa-Tapia was an employee of Munoz as well. These allegations cast the Underlying Action "solely and entirely within the [Auto Exclusion]." There is no reasonable way of reading the allegations to escape the claim that Ulloa-Tapia was employed by Munoz, and that Munoz owned/operated the subject vehicle, thus placing the allegations squarely within the Auto Exclusion.

Defendants argue that the Auto Exclusion also does not apply because some of the allegations against Munoz relate to conduct outside the use or operation of a vehicle. For example, Mastroluca seeks damages from Munoz for actions relating to the failure to follow the debris hauling routes, which he claims were a proximate cause of Renard's death.[8] Mastroluca also seeks damages from Munoz for its acts as the agent of Rebco and S3, both of whom contributed to the decisions that resulted in the Second Avenue Subway construction debris being hauled along E. 90th Street. Defendants thus contend that "[s]hould Munoz be found liable on the theory that its role in establishing, operating and/or sanctioning the use of E. 90th as part of the debris hauling – either on the basis of its direct acts or as an agent for one of its co-

---

[8] The accident is alleged to have occurred on E. 90th Street, a street that was not on a designated hauling route. Underlying Compl. ¶ 67.

defendants – that liability would fall outside the scope of the [Auto Exclusion]." Defendant Brice Mastroluca's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Doc. 104, at 8-9.

Defendants are mistaken, however. The Auto Exclusion elaborates that it applies:

> even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . that is owned or operated by or rented or loaned to any insured.

Thus, the Auto Exclusion fully precludes defense coverage so long as the occurrence that caused the accident involved the ownership or operation of an auto by the insured. New York courts have confirmed this reading of the Auto Exclusion, explaining that "[i]t is well established that 'it is the act giving rise to liability that is determinative, not the theories of liability alleged." *City of New York v. Western Heritage Ins. Co.*, 98 F. Supp. 3d 557, 564 (E.D.N.Y. 2015) (quoting *U.S. Fire Ins. Co. v. New York Marine & Gen. Ins. Co.*, 268 A.D.2d 19, 21 (1st Dep't 2000)). Therefore, "the mere fact that [an insured] could be found liable on [an] independent theory of recovery does not alter the operative act giving rise to the accident, namely, the use of [an insured's] vehicle." *Id.*; *see also New Hampshire Ins. v. Jefferson,* 213 A.D.2d 325, 330 (1st Dep't 1995) ("[W]hatever theory of liability the resourceful attorney may fashion from the circumstances of a client struck by an automobile, it remains that the immediate and efficient cause of the injury is, in fact, the automobile.").

Here, regardless of whether the theory of liability in the Underlying Action is negligence, negligent hiring or supervision, or negligence in the decisions concerning the debris hauling routes, the act giving rise to liability is the same – an automobile accident. Therefore the Court

concludes that the Auto Exclusion contained in Section I(2)(g) of the Policy bars coverage for Munoz's defense in the Underlying Action.

### 3. Mount Vernon's Duty to Indemnify Munoz

As to whether Mount Vernon has a duty to indemnify Munoz, the Court finds that this question is not yet ripe for review. Because the Underlying Action is still pending, it is possible that Mendez, not Munoz, will be found to have been the sole employer of Ulloa-Tapia, as well as the sole owner/operator of the subject truck. In which case, the Policy's Auto Exclusion would not apply to Munoz. Yet Munoz may still be found liable in the Underlying Action, and thus potentially entitled to coverage. For example, Munoz is alleged in the Underlying Action to have acted negligently in failing "to ensure that dump trucks traveling to and from the work zone followed the designated haul routes." Underlying Compl. ¶ 75. Because the Underlying Action is still pending, and these determinations have yet to be made, the Court cannot make a ruling on Mount Vernon's duty to indemnify at this time. *See Atlantic Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261 (S.D.N.Y. 2013); *see also Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995) (explaining that "because of the possibility that the legal theory of the underlying suit may change, a conclusion that the insurer need not defend does not imply that it need not indemnify").

The Court recognizes that it is unusual for an insurer to potentially have a duty to indemnify, while being found to not have a duty to defend. Indeed, an insurer's duty to defend is generally understood as being broader than its duty to indemnify. However, the tests for each of these duties are distinct from one another. "The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person." *Servidone*, 64 N.Y.2d at 424. As described above, the pleadings

14

unambiguously indicate that the Auto Exclusion applies to Munoz, and thus that Mount Vernon does not have a duty to defend Munoz in the Underlying Action. However, in assessing Mount Vernon's duty to indemnify, the Court must await resolution of factual disputes in the Underlying Action, such as who owned/operated the subject truck and who employed Ulloa-Tapia, in order to assess whether the Auto Exclusion applies to Munoz. Likewise, the Court must await a determination of Munoz's liability, if any, in the Underlying Action. For these reasons, the Court finds that a determination as to Mount Vernon's duty to indemnify is not ripe for review.

### D. Mount Vernon's Delay in Disclaiming Coverage

Defendants claim that Mount Vernon failed to timely disclaim its duty to provide coverage, and therefore should be estopped from denying coverage in the Underlying Action. With regard to Mendez, Rebco, Ulloa-Tapia, S3, Skanska, Schiavone, and J.F. Shea, Mount Vernon did not have an obligation to timely disclaim coverage, because the denial of coverage was due to their not being additional insureds, and thus premised upon a lack of coverage. *See Hunter Roberts Const. Grp., LLC v. Arch Ins. Co.*, 75 A.D.3d 404, 407 (1st Dep't 2010) (holding that insurer had no duty to disclaim coverage, because claimants were not additional insureds); *see also Perkins v. Allstate Ins. Co.*, 51 A.D.3d 647, 649 (2d Dep't 2008) ("Where an insurer is entitled to deny a claim based on an absence of coverage, its failure to timely disclaim coverage does not preclude it from denying liability on that ground.").

With regard to Munoz, Mount Vernon did have an obligation to timely disclaim coverage because the disclaimer was premised upon a policy exclusion. *See Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 190 (2000). Pursuant to New York Insurance Law § 3420(d), an insurer "is obligated to give written notice of a disclaimer of coverage 'as soon as is reasonably

possible,' measured from the time that the insurer has sufficient information to disclaim coverage in good faith." *Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.,* 368 F.3d 209, 216 (2d Cir. 2004) (quoting N.Y. Ins. L. § 3420(d)).  An insurer that fails, without good reason, "to provide the insured with timely notice of its disclaimer or denial of coverage on the basis of a policy exclusion . . . will be estopped from disclaiming liability or denying coverage." *Moore v. Ewing*, 9 A.D.3d 484, 487 (2d Dept. 2004).

New York courts have held that unexplained delays of two months or more are unreasonable as a matter of law.  *See Mt. Vernon Fire Ins. Co. v. Harris*, 193 F. Supp. 2d 674, 677 (S.D.N.Y. 2002) (collecting cases).  However, a "delay occasioned by a 'reasonably prompt, thorough, and diligent investigation of the claim' does not render the insurer's disclaimer untimely, because an investigation is often necessary to determine whether there is any basis for disclaiming coverage." *Webster*, 368 F.3d at 216–17 (quoting *In re Prudential Prop. & Cas. Ins. Co.*, 213 A.D.2d 408, 408 (2d Dept. 1995)).  Ultimately, the insurer has the burden of demonstrating that any delay was reasonable.  *Ward v. Corbally, Gartland & Rappleyea*, 207 A.D.2d 342, 343 (2d Dep't 1994).  "While 'normally the question whether a notice of disclaimer of liability or denial of coverage has been sent as soon as is reasonably possible is a question of fact which depends on all the facts and circumstances, especially the length of and the reason for the delay,' in the 'exceptional case' this question may be decided without the benefit of a jury." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2d Cir. 2004) (quoting *Hartford Ins. Co. v. Nassau Cnty.*, 46 N.Y.2d 1028, 1030 (1979)).

Here, the Court finds that Mount Vernon's delay in disclaiming coverage to Munoz was reasonable as a matter of law.  Although there is a material dispute of fact as to precisely when Mount Vernon first received notice of the claim – Munoz asserts it was on February 4, 2011,

while Mount Vernon asserts it was not until February 9, 2011 – it is undisputed that shortly thereafter Mount Vernon initiated an investigation. On February 15, 2011, Mount Vernon reached out via email to Munoz's representatives to schedule an interview to gather additional information about the accident. However, Munoz's representative were not available until early March, and consequently the interview did not take place until March 3, 2011. Thereafter, it took Mount Vernon twelve days from the date of the interview to issue its disclaimer, on March 15, 2011.

Thus, even including the delay caused by Munoz's inability to meet for an interview until several weeks after Mount Vernon requested one, Mount Vernon's investigation took at most forty days. The Court finds this amount of time to be reasonable as a matter of law. *See, e.g.*, *Matter of Prudential Prop. & Cas. Ins. Co. (Mathieu)*, 213 A.D.2d 408, 408 (2d Dep't 1995) (holding that delay of "slightly more than two months" to conduct an investigation deemed reasonable); *Vesta Fire Ins. Corp. v. Seymour*, No. 96 Civ. 3844, 1996 WL 1057158, at *6 (E.D.N.Y. Dec.17, 1996) (same for a period of "just over three months"); *U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel*, 900 F. Supp. 641, 648-49 (E.D.N.Y. 1995) (same for a period of "over two months").[9]

Munoz nonetheless contends that the grounds for disclaimer were clear upon completion of the March 3, 2011 interview, and that the subsequent twelve day delay in issuing a disclaimer

---

[9] Munoz cites a series of cases where delays as short as 34 days were found unreasonable as a matter of law. These cases are inapposite, however, because the delays were either unexplained or premised upon an unacceptable excuse. *See Moore*, 9 A.D.3d at 488, 781 N.Y.S.2d at 54-55 (finding a 48 day delay following an interview that provided insurer with grounds for disclaimer to be unreasonable) ; *McAlpin v. RLI Ins. Co.*, 509 F. Supp. 2d 242, 250 (W.D.N.Y. 2007) (finding insurer's excuse that delay was caused by a need for additional documentation to be unreasonable, given that the documentation ultimately played no part in its decision to disclaim); *NGM Ins. Co. v. 52 Liberty*, No. 9 Civ. 9003, 2010 WL 6501383, at *6 (S.D.N.Y. Dec. 6, 2010) (finding a 34 day delay to be unreasonable where the insurer already knew of grounds for disclaimer). Here the delay is explained by Mount Vernon's completion of an investigation, which Munoz does not dispute was necessary for Mount Vernon to make an informed decision regarding its disclaimer. Indeed, it is clear that Mount Vernon needed to assess who owned the subject truck in order to determine whether the Policy's Auto Exclusion applied.

was unreasonable. However, the Court finds that twelve days was a reasonable period for Mount Vernon "to receive, evaluate, and act upon the report." *See Farmbrew Realty Corp. v. Tower Ins. Co. of New York*, 289 A.D.2d 284, 285, 734 N.Y.S.2d 592, 594 (2001) (finding insurer's twenty day delay in issuing a disclaimer after interviewing insured's representatives to be reasonable as a matter of law). Therefore, the Court does not find that Mount Vernon's delay in disclaiming coverage estops it from denying coverage to Munoz in the Underlying Action.

## IV. CONCLUSION

For the foregoing reasons, Mount Vernon's motion for summary judgment is GRANTED in part and DENIED in part. The Court finds that (1) Munoz is the only party covered by the Mount Vernon Policy, (2) Mount Vernon does not have a duty to defend Munoz in the Underlying Action, (3) the question of whether Mount Vernon has a duty to indemnify Munoz in the Underlying Action is not yet ripe for review, and (4) Mount Vernon's delay in providing a disclaimer to Munoz was reasonable as a matter of law. The parties are directed to appear for a status conference on **October 18, 2016 at 10:30 AM**. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 89.

It is SO ORDERED.

Dated: September 30, 2016
New York, New York

_____
Edgardo Ramos, U.S.D.J.